EVAN L. WORTHAM v. MINNESOTA LAND CORPORATION.[1]

June 20, 1919.

No. 21,281.

**Vendor and purchaser — executory contract of sale — lands included.**
  An executory contract for the sale of land contained a stipulation that other lands owned by the vendor might be included therein, if within a time therein stated an outstanding contract to a third person should be canceled. It is *held*, on the facts stated in the opinion, that there was no cancelation of the outstanding contract as contemplated by the parties, and that the lands therein included did not therefore become a part of plaintiff's contract.

Action in the district court for Ramsey county to recover $16,103.23 upon an executory contract for the sale of land. The case was tried be-

[1]Reported in 172 N. W. 889.

fore Olin B. Lewis, J., who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony granted its motion to direct a verdict in its favor. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

B. H. Schriber and O. S. Baylies, for appellant.

O'Brien, Young, Stone & Horn, for respondent.

BROWN, C. J.

Defendant was the owner of large tracts of land in the northern part of the state, and on the fifteenth day of March, 1912, entered into an executory contract for the sale of about 9,000 acres thereof to plaintiff, for the agreed price of $3.10 per acre. The terms of the contract were full and complete, and obligated defendant to convey the land to plaintiff upon payment of the purchase price at stated times in the future. At the date of that contract by an outstanding executory contract between defendant and the British American Land Company, a corporation, similar to that entered into between plaintiff and defendant, defendant had sold and agreed to convey to that company various tracts of land situated in Itasca county, aggregating over 6,000 acres. The contract was in the usual form of such instruments and contained provisions for the cancelation of the same, for a failure of the vendee to make the deferred payments of the purchase price at the time or times therein stated.

At the time the contract involved in this action was entered into, the parties had certain negotiations looking to the inclusion therein on certain conditions of the lands so agreed to be sold to the British American Company, and it was finally agreed that, if the British American Company contract should be canceled for default in compliance with the terms thereof within six months, the lands therein might be included in this contract upon the same or similar terms. The stipulation as finally agreed to and incorporated in the contract was as follows:

"And it is further agreed that in case any lands shall hereafter revert to the party of the first part, (defendant) within six (6) months from the date hereof, through cancelation of any contracts heretofore entered into by the party of the first part and now operative, such lands may be added to and included under this agreement, provided the same are charged for under this agreement and included at the price of $3.10 per

acre, and such lands shall thereupon be considered as part of this agreement and subject to the same conditions as all other lands affected thereby."

The British American Company defaulted in its payments, and its manager, one Todd, indicated to defendant in some way that the company preferred not to proceed further in performance of the contract In response to this information defendant's secretary and manager, Hoffman, on June 28, 1912, wrote the company calling attention to the default and to its indicated preference as stated by Todd not to go further with the contract, and stating that defendant therefore considered the contract void, concluding with the announcement that they would place the lands on the market for sale to other parties. The British American Company, through Todd or otherwise, made no reply to this letter, and there was no express acquiescence in the declaration thereof that defendant considered the contract void. But there were subsequent verbal negotiations between defendant and Todd, the representative and manager of the British American Company, by which he retained on behalf of his company the right to sell the lands, and by which the contract was in effect treated as still in force notwithstanding the statement in the letter referred to that defendant considered it void. The evidence in this respect is clear.

Thereafter in October, 1912, defendant, acting through its secretary and manager, Hoffman, made a sale of the lands included in the British American Company contract to one Jensen at the price of $5 per acre. Negotiations with Jensen were commenced by an agent of defenant named Edwards in August, 1912, but the sale was finally closed by Hoffman some time in the month of October following.

On the theory and contention that there was a cancelation of the British American Company contract, and that the lands embraced therein automatically and by force of the provisions of contract above quoted became included in plaintiff's contract, plaintiff demanded of defendant subsequent to the sale of Jensen, all that was received for the lands over and above the price plaintiff was to pay under the terms of its contract. Defendant refused to recognize the claim and in February, 1918, plaintiff brought this action to recover thereon.

The facts as here outlined are fully stated in the complaint, and the

allegations to the effect that by the terms of plaintiff's contract the British American Company lands automatically became included therein upon a cancelation of that contract, and also the allegations to the effect that the British American Company contract was canceled within the six months, were all put in issue by the answer.

The cause came on for trial before the court and a jury, at the conclusion of which the court directed a verdict for defendant, and plaintiff appealed from an order denying a new trial.

Two questions are presented by the record, namely: (1) Whether the British American Company lands upon a cancelation of its contract became automatically included in plaintiff's contract without further negotiations between the parties; and (2) whether there was a cancelation of that contract within the meaning and purpose of the stipulation in plaintiff's contract.

We are not entirely agreed upon the first question, though a majority of the court are of opinion that it should be answered in the negative. But we do not discuss the question, nor dispose of the appeal on that ground, for we are all agreed that there was no such cancelation of the British American Company contract as was contemplated by the parties, and, as that conclusion disposes of the appeal on the merits, resulting in an affirmance and ending the litigation, we pass without further comment the other feature of the case.

The cancelation which the parties had in mind, and which was a condition precedent to a transfer of the British American Company lands to plaintiff's contract, necessarily was one that would put an end to the former and the rights of the British American Company thereunder, leaving defendant as free to dispose of the lands as though the contract had never been entered into with that company. Of this there can be no serious doubt. But we fail to find in the record any evidence of such a cancelation, or evidence to justify a submission of the question to the jury. There was no cancelation by notice under the statute, none by mutual consent of the parties, and the evidence will not justify the court in declaring as a matter of law that the rights of the British American Company had been fully terminated. The only evidence having any special bearing on the question is found in the statement by Todd, manager of the British American Company, that he preferred to go no fur-

ther with the contract. But his company did not surrender its rights, nor was there an abandonment of the contract by Todd, for subsequent negotiations between the parties left him free to continue his efforts to sell the land, and that situation remained until defendant sold all the lands to Jensen. The declaration of Hoffman, defendant's manager, in referring to Todd's disinclination to go further with the contract, that he, Hoffman, considered the contract void and at an end, was of no force or effect as a cancelation of the contract or the termination of the rights of the parties thereunder. His declaration in that respect was not replied to by Todd or acquiesced in by him, and, since there was no cancelation of the contract in fact, Hoffman's act in thereafter selling the lands to Jensen was a violation of the rights of the British American Company, and clearly exposed defendant to an action for damages as for a breach of its contract with that company. In fact the pleadings disclose that such an action was brought by the British American Company. But we do not consider that feature of the case, for the court excluded evidence thereof, and the matter is of no special importance. We dispose of the case upon the other ground stated, namely, that the evidence wholly fails to show a cancelation of the British American Company contract.

Order affirmed.